## JOE ULRICH v. THE STATE.

### *No. 7382.   Decided June 20.*

1. **Verdict—Mode of Arriving at.**—Where, in determining the punishment to be assessed, the jury agree that each juror shall state the period of imprisonment he desires to assess, and that the several periods thus stated shall be added together and the product divided by twelve, and that the quotient shall be the punishment, the verdict is illegal. But if it be not agreed by the jury that the jurors shall abide by such quotient before the same is so ascertained, but the same is agreed to after it has been

so ascertained, the verdict is not thereby vitiated. See the opinion for an illustration of the rules above stated. Hurt, J., dissenting as to the facts.

2. **Same—Motion for New Trial.**—In a contest over matters of fact involved in a motion for new trial, the trial court shall, by affidavits or otherwise, hear evidence and determine the issue. In such case the decision of the trial court will not be revised on appeal unless manifestly wrong. ·

3. **Postponement—New Trial.**—See the opinion for absent testimony held to be not probably true when considered in connection with the evidence adduced on the trial, wherefore the refusal of defendant's application for a postponement based thereon did not constitute good ground for a new trial.

APPEAL from the District Court of Wilbarger. Tried below before Hon. G. A. Brown.

The opinion sufficiently states the case.

*Joseph Hall* and *Charles Wheeler*, for appellant.

*R. H. Harrison*, Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—Appellant was given three years in the penitentiary as his punishment for assault with intent to murder Mrs. Turnbull. Attached to the motion for new trial is the affidavit of one of the jurors, in which he states that the verdict was arrived at by each juror "writing down his individual verdict of the number of years of imprisonment" he was desirous of allotting the defendant, and the number of years thus set down by each juror were added together and divided by twelve and the quotient should be the verdict of the entire jury, with the express agreed upon provision that if the quotient should be between any two whole years and less than six months, defendant should have the benefit of same, but if the months should be over six and less than twelve the State should have the benefit and the year over should be the verdict, and with the further agreement that before the amount was ascertained they would be bound by the result. The jury first found the defendant guilty of assault to murder and then assessed the punishment as aforesaid. This affidavit and the motion for new trail based thereon were controverted by the State. In the affidavits of jurors filed by the district attorney with his answer to the said motion it is shown that "it was not agreed by the jurymen that the result obtained by the addition and division as above stated should absolutely be their verdict, but the mode adopted was only to reach a fair and reasonable verdict, and after the addition of the amounts of the years that each juryman agreed to give the defendant, and the division of the result by twelve, which gave three years as the quotient, it was agreed by the jury that the three years should be the amount of penalty which they were to give defendant in this verdict, and which was so stated in their verdict in addition to their former decision that defend-

ant was guilty. There was no previous agreement that the quotient should absolutely be their verdict until after the same was reached as above stated, and there was no agreement to bind the jurymen to the result until after the same was reached, and after the verdict was reached as above set out the foreman asked the jurymen if they all agreed to the verdict, and it was unanimously so agreed." This affidavit was made by two of the jurors.

The vital question involved on this issue was, Did the jurors agree to abide by the result to be ascertained, and before that result was reached? If they did, the verdict was vicious; otherwise, it was not. "The impropriety consists in the agreement to be bound by the result." Wood v. The State, 13 Texas Ct. App., 138, and authorities therein cited. But "a jury may ascertain what the amount will be, and if the amount produced gives satisfaction they may return it as their verdict." (Same authorities.) There was a conflict as to the agreement in arriving at the verdict. If the affidavit attached to and in support of the motion correctly stated the facts, the verdict was vicious; if the affidavits attached to the State's contest of the motion recited the facts truthfully, the judgment of the court overruling the motion was correct, and the verdict good. There was a conflict in the evidence on the issue involved, and the court settled that conflict by overruling the motion. This he had the legal right and authority to do. The presumption obtains that the judgment is correct.

In contests over matters of fact involved in motions for new trial the statute provides that the trial courts shall by affidavit or otherwise hear evidence and determine the issue. Willson's Crim. Stats., secs. 2553, 2554. The decision of such court is final usually, and unless manifestly wrong will not be disturbed by the appellate courts. We do not feel authorized to disturb the judgment of the court in this matter.

Appellant asked for a continuance for the testimony of Felix Anderson, by whom he expected to prove that he did not intentionally shoot Mrs. Turnbull, the alleged assaulted party, but that she was shot by an accidental discharge of his gun. The facts show that this testimony is not true. He, in company with Anderson, went to the residence of the Turnbulls and succeeded in getting up a difficulty with one or more members of the family. Appellant informed them that he came "for a fuss, and by G—d he was going to have it before he left, and he could kill four or five people before they could stop him." He presented his gun on the son of Mrs. Turnbull, and at this juncture Mrs. Turnbull partially opened a door, whereupon defendant turned his gun upon her and fired, hitting her in two places. He then reloaded his gun as though he was going to shoot again. Anderson was with defendant during this entire transaction, and they left together and were arrested together in a field north of town a short time thereafter.

It was fully proved that on account of some peculiarity about the gun it could not be discharged except by pulling very hard on the trigger. At Turnbull's, Anderson was introduced to the family under the name of Clark. Defendant testified that when he went to Turnbull's he was armed with a Winchester gun, a Remington six-shooter, and a box of cartridges, and that his witness Anderson was armed with a Smith & Wesson 38-caliber pistol and a Colt six-shooter. Anderson was also wearing at the time they were at Turnbull's, and when arrested, a breast-plate of iron, which covered his breast from his neck downward. This coat of mail was made out of an old ploughshare, and was tied on his body with ropes. The evidence collated explodes the theory of accidental shooting, and manifests that the accidental theory is probably not true. Men thus armed and covered with coats of mail do not as a rule go about the county and shoot persons accidentally. When thus panoplied and armed, if they go about people's houses and curse and swear and threaten the lives of the good citizens it furnishes pretty strong evidence of a heart actuated by malice, regardless of social duty, and fatally bent on mischief, and is not a manifestation of a chivalrous regard for the rights of others, and it is a strong indication that such knights errant are not missionaries of a Christian philanthropy, nor preachers of the "golden rule," nor ambassadors of a higher civilization, nor advocates of the great principles of love and charity enunciated in the two great commandments.

The court did not err in overruling the motion for postponement. The charge sufficiently presents the law of the case. The verdict of the jury is fully supported by the facts. There is no error for which the judgment should be reversed, and it is therefore affirmed.

*Affirmed.*

HURT, J., dissents. If Westmoreland, the juror who signed the affidavit attached to the motion for a new trial, understood the agreement as set forth in his affidavit, then his verdict is tainted, although the others did not so understand it.